UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JON HOLLAND,                          )
TYANE HOLLAND,                        )
MELISSA FERRILL,                      )
JAMIE HOLLAND,                        )
ANGELA WRIGHT, and                    )
JESSICA FRIEDMEYER,                   )
                                      )
        Plaintiffs,                   )
                                      )
v.                                    )    No. 1:24-cv-00201-CMS
                                      )
CITY OF SIKESTON,                     )
MISSOURI, and                         )
MARTIN SIMMERMAN,                     )
                                      )
        Defendants.                   )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants City of Sikeston, Missouri and

Martin Simmerman's Motion to Dismiss Plaintiffs' First Amended Complaint

pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 18).  Defendants assert they are entitled

to dismissal because qualified immunity protects them against Plaintiffs' 42 U.S.C.

§ 1983 claims and Missouri's doctrine of official immunity similarly protects them

against Plaintiffs' state law claims. This Court **GRANTS** Defendants' Motion to

Dismiss Plaintiffs' First Amended Complaint (Doc. 18).

1

## PLAINTIFFS' FACTUAL ALLEGATIONS

Plaintiff Jammie Holland is the widow of the deceased, George Holland (Decedent), and Plaintiffs Jon Holland, Tyane Holland, Melissa Ferrill, Angela Wright, and Jessica Friedmeyer are the children of Decedent.[1] (Doc. 17 at 3; Doc. 29 at 1). As alleged in Plaintiffs' First Amended Complaint (Complaint), Decedent attended an Alcoholics Anonymous meeting in Sikeston, Missouri, on October 14, 2023. (Doc. 17 at 3). Decedent experienced a "mental health crisis" and began "incoherent[ly] and nonsensical[ly]" speaking to the other attendees. (Doc. 17 at 4). Decedent then pulled a pistol and placed the barrel of the pistol in his mouth. (Doc. 17 at 4). Plaintiffs allege that Decedent did not point the pistol at any other attendees and allowed all the attendees to leave the building. (Doc. 17 at 4).

Sikeston Police Sgt. Devin Wierschem was the first officer to arrive on the scene. (Doc. 17 at 4). When Sgt. Wierschem encountered Decedent, Decedent was in the back of the meeting room, approximately 35 feet from the front door of the building. (Doc. 17 at 4). Sgt. Wierschem placed himself in a tactical position at the front door of the building and spoke to Decedent. (Doc. 17 at 4). Decedent expressed suicidal ideations and continued to speak incoherently. (Doc. 17 at 4).

---

[1] Plaintiffs Jamie Holland, Angela Wright, and Jessica Friedmeyer moved to intervene on August 14, 2025. (Doc. 29). The Court granted the motion to intervene, as well as leave to file any additional suggestions in opposition to Defendants' motion to dismiss by September 22, 2025. (Doc. 33). No additional suggestions in opposition were filed.

Other Sikeston police officers, including Defendant Martin Simmerman, soon arrived. (Doc. 17 at 5). According to Plaintiffs' Complaint, Sgt. Wierschem informed the other officers that Decedent "hadn't pointed it at us," "pointed to himself," and "never made a motion this way." (Doc. 17 at 5).

All officers stayed outside the front door, which was the only accessible entrance. (Doc. 17 at 5). During the encounter, Sikeston Police requested a crisis negotiator. (Doc. 17 at 5). Defendant Simmerman remained at the front door "in [a] tactically concealed and covered position behind the outer wall" of the building with an assault rifle pointed at Decedent through the open front door. (Doc. 17 at 5-6).

Plaintiffs further allege in the Complaint that, approximately 15 minutes after Sgt. Wierschem first spoke to Decedent, Decedent was "standing still, in clear view, completely unconcealed and uncovered, looking down, and slowly moving the gun away from his right temple to a few inches in front of his face with the muzzle pointed upwards towards the ceiling. . .." (Doc. 17 at 6-7). According to Plaintiffs' Complaint, Decedent was "not in a shooting position, and not ready to shoot at the time Defendant Simmerman opened fire on him." (Doc. 17 at 6). Officer Simmerman fired 15 rounds at Decedent, striking him at least six times and resulting in Decedent's death. (Doc. 17 at 7). None of the Sikeston Police officers

warned Decedent that they would use deadly force against him before firing. (Doc. 17 at 6).

Plaintiffs allege that Decedent "never threatened, took menacing actions towards, nor pointed his pistol at Defendant Simmerman, nor anyone else, at any time throughout this entire incident." (Doc. 17 at 7). Plaintiffs also note that Sgt. Wierschem stated that Decedent "never pointed [the pistol] at my direction" and that another officer later stated that Decedent "never pointed the weapon at us, he kept it to his head or he would put it down to his side and bring it back up to his head." (Doc. 17 at 7).

Plaintiffs bring six counts: Excessive Use of Force in Violation of the Fourth and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983 against Defendant Simmerman (Count I); Wrongful Death under § 537.080(1), RSMo, against Defendant Simmerman (Count II); Battery under § 537.080(1), RSMo, against Defendant Simmerman (Count III); A Custom/Policy/Pattern/Practice of Excessive Use of Force in Violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 against Defendant the City of Sikeston (Count IV); Substantive Due Process Deprivation in Violation of the Fourteenth Amendment under 42 U.S.C. § 1983 against Defendant Simmerman (Count V); and A Custom/Policy/Pattern/Practice of Substantive Due Process

Deprivations in Violation of the Fourteenth Amendment under 42 U.S.C. § 1983

against Defendant the City of Sikeston (Count VI).[2]

## EVENTS DEPICTED ON VIDEO

Defendants Simmerman and the City of Sikeston filed a motion to dismiss

on the bases of qualified immunity and official immunity. Along with their motion

to dismiss, Defendants filed three videos from the body-worn cameras of officers

at the scene. (Exs. A, B, C). The three video exhibits depict the following events.

As soon as Sgt. Wierschem arrived in the parking lot, a bystander informed

him of a "crazy guy with a gun." Ex. A. at 00:40. Sgt. Wierschem approached

Decedent's location and allowed two other attendees of the meeting to exit the

room. Ex. A at 01:40-01:50.

Upon first contact with Decedent, Sgt. Wierschem told Decedent to put the

gun down multiple times; instead, Decedent pointed the gun at the ceiling before

pointing it at his right temple. Ex. A. at 01:50. Decedent refused to put the gun

down and warned Sgt. Wierschem, "It doesn't have a safety on it." Ex. A. at 02:00.

Decedent then offered to put the gun down if the police contacted the local news.

Ex. A. at 02:20.

---

[2] In their Memorandum in Opposition to Defendants' Motion to Dismiss, Plaintiffs ask this Court to dismiss Counts V and VI without prejudice. (Doc. 25 at 20). For the reasons explained herein, Defendants are entitled to qualified immunity on all of Decedent's § 1983 claims. Pursuant to Plaintiffs' request and based on qualified immunity, this Court therefore dismisses Counts V and VI with prejudice.

5

For the next few minutes, Sgt. Wierschem attempted to negotiate with Decedent. Ex. A. at 02:20-04:48. At approximately 7:49:30 p.m., Decedent moved behind a wall in the meeting hall. Decedent was obscured from view and sporadically peeked out from behind the wall. Ex. A at 04:48. The firearm possessed by Decedent was not visible at this time. Ex. A. at 04:48.

After Decedent obscured himself behind the wall, Sgt. Wierschem requested a negotiator. Ex. A at 05:15. For the next five minutes, Decedent occasionally emerged from behind the wall. Ex. A at 05:15-10:50. Sgt. Wierschem, who was standing to the left side of the open front door, stated he could "barely" see Decedent. Ex. A at 10:50.

Sgt. Wierschem and the other officers continued to negotiate with Decedent. At approximately 8:01 p.m., Decedent reiterated that he wished to speak to the local news. Ex. C at 15:05-15:15. This time, Decedent claimed that he would take the clip out of his gun and throw it to the officers if the news arrived. Ex. C at 15:05-15:15. One of the officers responded, "The news won't come while you've got a gun in your hand, buddy." Ex. C at 15:15. Decedent replied, "Nope. It's that, or I kill myself, or you kill me. There's your options. You got—you got no more options." Ex. C at 15:20.

Decedent suddenly emerged from behind the wall while continuing to speak with the officers. Ex. C at 15:23. He pointed the gun at his right temple with his

right hand. Ex. C. at 15:24. Decedent's left hand hung down next to his left hip. Ex. C. at 15: 24. An officer responded to Decedent's ultimatum, "What about the third option, man? Drop the gun." Ex. C at 15:24-15:25. In all, officers instructed Decedent to drop the gun more than 20 times. Ex. A; Ex. B; Ex. C.

Within a few seconds of emerging from behind the wall, Decedent took one step to his left and pointed his chin towards the ceiling. Ex. C. at 15:26. Then, in a split-second, Decedent moved the gun from his right temple, lowered the gun in front of his body with the muzzle pointed away from him, extended his right arm, and moved his left hand up from his hip towards the gun. Ex. C at 15:27. At that moment, Decedent's left hand was within inches of the pistol grip. Ex. C. at 15:27. Officer Simmerman fired three shots, striking Decedent. Ex. C. at 15:27-15:28. As Officer Simmerman opened fire, Decedent appeared to be moving the gun back towards his temple or to the ceiling. Ex. C at 15:27-15:28. Decedent fell to the floor with the pistol still in his right hand. Ex. C at 15:28.

Officer Simmerman and other Sikeston officers rushed into the meeting hall. Ex. C at 15:30. The officers continued to repeatedly order Decedent to drop the firearm. Ex. C at 15:33. Officer Simmerman fired five more shots at Decedent while approaching him. Ex. C at 15:31-32. Decedent crawled back behind the wall to the hidden area of the room where he had spent most of the standoff. Ex. B at 16:26. Decedent shouted, "I told you I was gonna die—" before Officer

7

Simmerman discharged his weapon five more times. Ex. B at 16:29. An officer instructed Decedent to drop the gun one last time. Ex. B at 16:30.

The video depicts Decedent's firearm ejected from behind the wall, apparently from Decedent throwing it. Ex. B at 16:30. Officers then restrained Decedent and performed on-site emergency medical procedures. Ex. B at 16:41.

## ANALYSIS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plaintiff must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *K.T. v. Culver-Stockton College*, 765 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). This Court assumes all the complaint's factual allegations are true and construes all reasonable inferences in the plaintiff's favor. *Unesko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019) (citing *Retro Television, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012)).

That said, this Court's review is not limited to the four corners of the pleadings. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citing Fed. R. Civ. P. 12(b)(6)). On a motion to dismiss, a court may consider material "necessarily embraced by the pleadings." *LeMay v. Mays*, 18

8

F.4th 283, 289 (8th Cir. 2021). "Videos of an incident are necessarily embraced by the pleadings." *Ching v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023) (quoting *LeMay*, 18 F.4th at 289). Accordingly, when a video's "authenticity and completeness are not in dispute," the video is properly before the court on a motion to dismiss. *Crow v. Rasmussen*, No. 23-CV-2403, 2024 WL 2014211 at *3 (D. Minn. May 7, 2024); *Miller-Fields v. Londregan*, 755 F.Supp.3d 1122, 1127 n.1 (D. Minn. 2024) (citing *Crow*, 2024 WL 2014211 at *3), *appeal docketed*, No. 24-3412 (8th Cir. Nov. 27, 2024)).

This Court need not accept "the plaintiff's version of the facts if they are blatantly contradicted by video evidence." *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (quoting *Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017)) (alterations omitted); *see also Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (directing lower courts to view "the facts in the light depicted by the videotape"). Additionally, "immunity questions," like those before the Court here, should be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

### Qualified Immunity

"Qualified immunity is 'an immunity from suit rather than a mere defense to liability,'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v.*

*Forsyth*, 472 U.S. 511, 526 (1985)), which should be resolved "at the earliest possible stage in litigation," *Hunter*, 502 U.S. at 227.

"An officer is entitled to qualified immunity unless: '(1) he violated a constitutional right, and (2) that constitutional right was clearly established so that a reasonable officer would know of the right at the time of the alleged violation.'" *Klum v. City of Davenport*, 145 F.4th 907, 912 (8th Cir. 2025) (quoting *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 982 (8th Cir. 2019)). A court has discretion to resolve either prong first. *Pearson*, 555 U.S. at 236.

## 1. Violation of a Constitutional Right

Taking the first prong first: "The use of deadly force to restrain a person is a seizure under the Fourth Amendment." *Dimock v. City of Brooklyn Center*, 124 F.4th 544, 552 (8th Cir. 2024) (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). "Claims against local police for excessive force during a seizure are analyzed under the Fourth Amendment's reasonableness standard." *Lankford v. City of Plumerville*, 42 F.4th 918, 921 (8th Cir. 2022). Objectively unreasonable uses of deadly force violate the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The key question is whether the officers' actions were "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Nance v. Sammis*, 586 F.3d 604, 610 (8th Cir. 2009) (quoting *Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir. 2005)).

"Courts consider the totality of the circumstances, which includes 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively fleeing or resisting arrest.'" *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018) (quoting *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

An officer's use of deadly force is objectively reasonable when the officer "has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." *Rogers*, 885 F.3d at 1121 (quoting *Loch*, 689 F.3d at 965). "Where the suspect possesses a firearm, deadly force is justified when the suspect 'points the firearm at another individual or takes a similar "menacing action."'" *Maser v. City of Coralville, Iowa*, 139 F.4th 1004, 1009 (8th Cir. 2025) (quoting *Cole ex rel. Est. of Richards v. Hutchins*, 959 F.3d 1127, 1132 (8th Cir. 2020)) (alterations omitted).

At the outset, this Court observes that Plaintiffs do not dispute the authenticity or completeness of the video exhibits. *See Crow*, 2024 WL 2014211 at *3. Instead, Plaintiffs concede in their opposition to Defendant's motion to dismiss: "Defendants correctly state a court need not 'adopt the plaintiff's version of the

facts *if* they are "blatantly contradicted" by video evidence.'" (Doc. 25 at 10) (quoting *Waters*, 921 F.3d at 734) (emphasis added by Plaintiffs).  The video evidence "blatantly contradicts" Plaintiffs' version of the facts. *See Waters*, 921 F.3d at 734.

Plaintiffs' Complaint characterizes Decedent's actions immediately before the shooting as follows:

> [Decedent] was standing still, in clear view, completely unconcealed and uncovered, looking down, and slowly moving the gun away from his right temple to a few inches in front of his face with the muzzle pointed upwards towards the ceiling, not in a shooting position, and not ready to shoot when Defendant Simmerman opened fire.

(Doc. 17 at 6-7).

First, as revealed by the video, Decedent's actions cannot accurately be characterized as "slow." Instead, in a fraction of a second, Decedent moved the gun away from his right temple, lowered the gun in front of his body, and quickly moved his left hand from his hip to within inches of the pistol grip, appearing to be getting into a shooting stance. Ex. C at 15:27. Also contrary to Plaintiffs' allegations, Decedent extended his right arm and pointed the muzzle of the pistol outward in the general direction of the officers. Ex. C at 15:27.

In these key respects, among others, the video exhibits blatantly contradict the allegations in Plaintiffs' Complaint. From the events depicted in the video,

12

Officer Simmerman reasonably could have believed that Decedent pointed the firearm in the direction of the officers.

Still, the video also demonstrates that, as Officer Simmerman opened fire, Decedent moved the muzzle of the gun away from the direction of the officers and back towards his head or the ceiling. Nonetheless, the dispositive issue here is not what happened as Officer Simmerman opened fire or the instant after he opened fire, but what happened before he made the split-second decision to open fire. "With respect to a claim of excessive force, the same standard of reasonableness at the moment applies[.]" *Graham v. Connor*, 490 U.S. 386, 396 (1989). "[T]he situation at the precise time of the shooting will often be what matters most; it is, after all, the officer's choice in that moment that is under review." *Barnes v. Felix*, 605 U.S. ---, 145 S.Ct. 1353, 1358 (2025). It goes without saying, then, that events that transpired after the decision to use deadly force are irrelevant to the reasonableness analysis. *See, e.g.*, *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) (evaluating the reasonableness of an officer's use of deadly force "[u]nder the circumstances at the moment when the shots were fired.").

Even if Plaintiffs' assumptions that Decedent never intended to harm the officers were true, "[a]n act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment." *Loch*, 689 F.3d at 966 (citing *Krueger v. Fuhr*, 991 F.2d 435, 439 (8th Cir.1993)); *see also Partlow v.*

*Stadler*, 774 F.3d 497, 502 (8th Cir. 2014) ("Even if Partlow intended to do no harm to the officers as he moved the shotgun, the officers' use of force was objectively reasonable. They had no way of knowing what Partlow planned to do.").

Similarly, a reasonable officer could have interpreted Decedent's sudden movements, short of pointing the gun directly at the officers, as a "menacing action" also justifying the use of deadly force. Raising a loaded gun is reasonably perceived as a "menacing action." *Aden v. City of Bloomington, Minnesota*, 128 F.4th 952, 960 (8th Cir. 2025); *Rogers*, 885 F.3d at 1121-22 (finding officers acted reasonably in using deadly force when defendant raised gun to shin-level); *see also Partlow*, 774 F.3d at 502-503 (holding an officer's use of deadly force was objectively reasonable when the suspect moved his shotgun in a manner that led officers to believe he was aiming at them after refusing commands to drop the weapon). In short, it was objectively reasonable for Officer Simmerman to perceive "an imminent threat of serious harm" justifying the use of deadly force. *Maser*, 139 F.4th at 1010.

Plaintiffs also claim that Officer Simmerman's use of deadly force was objectively unreasonable because the officers did not warn Decedent they would use deadly force. Admittedly, police officers should give a warning before using deadly force "when feasible." *Rogers*, 885 F.3d at 1122. Though the officers here

14

did not specifically warn Decedent that they would use deadly force, the officers had their guns drawn and pointed at Decedent. They instructed Decedent more than 20 times to put his gun down. Decedent's repeated refusals to do so prolonged and aggravated an already obviously volatile situation. In this context, Decedent had "adequate notice" that "any action the officers perceived as escalation could result in the use of deadly force." *Id.*

Finally, Plaintiffs briefly argue that Defendant's motion to dismiss should be denied because the videos do not depict Decedent "when Defendant Simmerman fired his last two volley of rounds, consisting of approximately 9 to 11 rounds, at [Decedent]." (Doc. 25 at 14) (citing Ex. C at 15:27-15:45). According to Plaintiffs, this omission "will certainly present fact issues subject to discovery inquiries." (Doc. 25 at 14). Plaintiffs do not otherwise develop this argument.  Suffice it to say that "mere speculation that certain facts might be established through discovery— when those facts are not alleged or reasonably inferable from the pleadings—will not save" a plaintiff's complaint from a motion to dismiss.[3] *National Union Fire Ins. Comp. of Pittsburgh, v. Cargill, Inc.*, 61 F.4th 615, 619 (8th Cir. 2023).

---

[3] This proposition arises from an appeal involving a motion for judgment on the pleadings. A motion to dismiss and a motion for judgment on the pleadings are both evaluated under the same standard. *Spagna v. Phi Kappa Psi, Inc.*, 30 F.4th 710, 715 (8th Cir. 2022) (citing *Packard v. Darveau*, 759 F.3d 897, 900 (8th Cir. 2014)).

In fact, Plaintiffs first parse the "volley of rounds" in their opposition to the motion to dismiss, not in their Complaint. Plaintiffs' Complaint focuses entirely on Officer Simmerman's initial use of deadly force.  For instance, Plaintiffs refer to Defendants "killing [Decedent] 14 minutes and 56 seconds after their first contact with him." (Doc. 17 at 9). This is precisely the time also alleged by Plaintiffs as the time that Officer Simmerman first fired at Decedent in other parts of the Complaint. (Doc. 17 at 7, 9, 16, 18). Though the Complaint references 15 total shots fired, it never mentions that Officer Simmerman fired at Decedent three separate times. (Doc. 17). Perhaps that is because, as depicted in the videos, Decedent remained in possession of the pistol even after Officer Simmerman's initial use of deadly force and after the officers continued to order him to drop the pistol, did not relinquish control of the pistol until after the last shot was fired, and yelled "I told you I was gonna die—". Ex. C at 15:27-33; Ex. B at 16:26-30. The Complaint does not parse Officer Simmerman's rapidly successive uses of deadly force and, under these circumstances, neither will this Court.

In sum, Officer Simmerman's use of deadly force was reasonable under the circumstances. Decedent's constitutional rights were not violated. Defendants are entitled to qualified immunity on this first prong of the analysis.

## 2. A Clearly Established Constitutional Right

Even if this Court were to assume that Officer Simmerman's use of deadly force was unreasonable (it was not), Defendants still would be entitled to qualified immunity for the additional reason that Officer Simmerman's conduct did not violate any clearly established constitutional right.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78–79, (2017) (per curiam) (internal quotation marks omitted). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). Although there does not need to be a case "directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 580 U.S. at 79 (alterations omitted). "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104-105 (2018) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam)).

17

None of Plaintiffs' cited cases are factually analogous to the one at hand. In fact, all of the cited cases are factually distinguishable because none of them involved an officer's reasonable belief that the person against whom the officer exercised deadly force pointed a gun at the officer or someone else, or otherwise took a menacing action. *See Cole v. Hutchins*, 959 F.3d 1127, 1134 (8th Cir. 2020) ("Officer Hutchins did not have probable cause to believe Richards posed an immediate threat of serious physical harm to Underwood as Richards was not pointing the weapon at Underwood or wielding it in an otherwise menacing fashion"); *Partridge v. City of Benton, Arkansas*, 929 F.3d 562 (8th Cir. 2019)(accepting the plaintiff's view that "Ellison shot a non-resisting, non-fleeing minor as he moved his gun in compliance with commands to drop his gun" based on the evidence in the record); *Partridge v. City of Benton, Arkansas*, 70 F.4th 489, 493 (8th Cir. 2023) (same); *Nance v. Sammis*, 586 F.3d 604 (8th Cir. 2009) ("Existing case law would have made it sufficiently clear to a reasonable officer that a suspect cannot be apprehended by use of deadly force unless that individual poses a threat of serious physical harm."); *Banks v. Hawkins*, 999 F.3d 521, 530-531 (8th Cir. 2021) ("Because a reasonable officer in the same circumstances as Hawkins would have known that it was unlawful to shoot an unarmed and nonaggressive man who posed no imminent threat to the officer or to anyone else,

we conclude—at this stage of the proceedings—that Hawkins's use of deadly force violated clearly established law.").

There simply is no constitutional or statutory right prohibiting an "officer from using deadly force when faced with an apparently loaded weapon." *Aipperspach v. McInerney*, 766 F.3d 803, 807 (8th Cir. 2014) (quoting *Sinclair v. City of Des Moines*, 268 F.3d 594, 596 (8th Cir. 2001)). Defendants are entitled to qualified immunity on this second prong of the analysis.

## Official Immunity

Under Missouri law, "public officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 444 (Mo. banc 1986) (quotation omitted). There are "two narrow exceptions" to this rule: "(1) when a public official fails to perform a ministerial duty required of the official by law, or (2) when a public official acts in bad faith or with malice." *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495 (Mo. 2024) (en banc) (citing *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. 2019) (en banc)). "[B]ad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury." *Twiehaus*, 706 S.W.2d at 447. "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his

duty and which he intends to be prejudicial or injurious to another." *Alsup*, 588 S.W.3d at 190 n.7 (quoting *Twiehaus*, 706 S.W.2d at 447).

"Official immunity shields Missouri police officers from liability for their discretionary decisions, including when they draw and fire a weapon, even if they are negligent." *N.S. v. Kansas City Board of Police Commissioners*, 35 F.4th 1111, 1115 (8th Cir. 2022) (quoting *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002)) (alterations omitted).

Plaintiffs assert that Officer Simmerman acted with "reckless indifference" to Decedent's rights because he shot Decedent "without justification." But as stated previously, Officer Simmerman could have reasonably believed that Decedent was pointing or was about to point his pistol at the officers and that he engaged in a menacing action. "When officers make split-second use-of-force decisions, absent evidence of ulterior motive or malice they are entitled to official immunity." *Green v. City of St. Louis*, 134 F.4th 516, 527 (8th Cir. 2025).

Defendants are entitled to official immunity on Plaintiffs' state law claims.[4]

**Plaintiffs' Claims Against Defendant the City of Sikeston**

Plaintiffs' claims against the City of Sikeston are based upon the City's alleged custom or practice of using excessive force. The Eighth Circuit "has

---

[4] Because Defendants are entitled to official immunity, this Court does not decide whether Plaintiffs have standing to assert a state-law battery claim.

consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (quoting *McCoy v. Monticello*, 411 F.3d 920, 922 (8th Cir. 2005)). Thus, when an officer's conduct does not violate a plaintiff's Fourth Amendment rights, "the plaintiff's claims against the city (inadequate training and municipal custom) must likewise fail." *Thomas v. Dickel*, 213 F.3d 1023, 1026 (8th Cir. 2000) (citing *Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir.1994)). Because Plaintiffs' claims that Officer Simmerman violated Decedent's Fourth Amendment rights fail, Plaintiffs' claims against the City likewise fail.

## CONCLUSION

Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 18) is **GRANTED**.  Plaintiffs' First Amended Complaint (Doc. 17) is **DISMISSED WITH PREJUDICE**.

Dated this 26th day of September 2025.

_____
CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE