**United States Court of Appeals**
***For The Eighth Circuit***
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Susan E. Bindler**
***Clerk of Court***

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

August 25, 2026

John S. Steward
STEWARD LAW FIRM
Suite 24
14824 W. Clayton Road
Saint Louis, MO 63017

RE: 25-3020 Jon Holland, et al v. Martin Simmerman, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc must be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Susan E. Bindler
Clerk of Court

CRJ

Enclosure(s)

cc: Clerk, U.S. District Court, Eastern District of Missouri
Peter J Dunne
Robert T. Plunkert
Stephen E. Walsh

District Court/Agency Case Number(s): 1:24-cv-00201-CMS

**United States Court of Appeals**
***For The Eighth Circuit***
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Susan E. Bindler**
***Clerk of Court***

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

August 25, 2026

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE: 25-3020 Jon Holland, et al v. Martin Simmerman, et al

Dear Sir or Madam:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellants and appeared on the appellants' brief, was John S. Steward, of Saint Louis, MO. The following attorney(s) also appeared on the appellants' brief; Stephen E. Walsh, of Poplar Bluff, MO.

Counsel who presented argument on behalf of the appellees and appeared on the appellees' brief, was Robert T. Plunkert, of Saint Louis, MO. The following attorney(s) also appeared on the appellees' brief; Phillip D. Stelzer, of Saint Louis, MO.

The judge who heard the case in the district court was Honorable Cristian M. Stevens.

If you have any questions concerning this case, please call this office.

Susan E. Bindler
Clerk of Court

CRJ

Enclosure(s)

cc: MO Lawyers Weekly

District Court/Agency Case Number(s): 1:24-cv-00201-CMS

# United States Court of Appeals
## For the Eighth Circuit

No. 25-3020

Jon Holland; Tyane Holland; Melissa Ferrill

*Plaintiffs - Appellants*

v.

Martin Simmerman; City of Sikeston, MO

*Defendants - Appellees*

Appeal from United States District Court
for the Eastern District of Missouri – Cape Girardeau

Submitted: April 15, 2026
Filed: August 25, 2026

Before KELLY, GRASZ, and KOBES, Circuit Judges.

GRASZ, Circuit Judge.

George Holland was shot and killed by Sikeston, Missouri, police officer Martin Simmerman after an armed standoff. The Holland family sued the City of Sikeston and Simmerman, alleging several causes of action under 42 U.S.C. § 1983 and state law. The City and Simmerman moved to dismiss the complaint and provided the district court with body camera footage from officers at the scene. After finding that the footage blatantly contradicted various allegations, the district court granted the motion and dismissed the complaint with prejudice. The Hollands

appeal, arguing the district court erred by determining Simmerman was entitled to qualified immunity and official immunity, and by dismissing their claim against the City. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. Background

During an Alcoholics Anonymous meeting in Sikeston, Missouri, George Holland began experiencing a severe mental health crisis evidenced by "incoherent and nonsensical speech." He then "pulled out a small pistol and placed the barrel of the pistol in his mouth." All the meeting attendees left the building safely, but Holland remained in the building alone with the firearm.

Officers from the Sikeston Department of Public Safety responded and positioned themselves outside the front door of the building in a "tactically concealed and covered position . . . ." They spoke to Holland through the open front door, which was the only way in or out of the building. For most of the encounter, Holland stood approximately 35 feet away from the front door in a corridor, partially concealed by a wall and piece of furniture. He expressed suicidal ideations, spoke incoherently, and requested to talk to a preacher and the local news. Despite repeated officer commands, he refused to drop his firearm. But Holland did not initially point the gun at officers nor threaten to harm them. While police spoke with Holland, Officer Martin Simmerman stood halfway in the doorframe with his rifle aimed at Holland.

After approximately fifteen minutes, Holland moved out of the corridor and into the officers' plain view. He stood in a corner, faced the officers, and held the firearm in his right hand with its barrel pointing to his right temple. In a split second, Holland moved the firearm down and away from his temple and simultaneously moved his left arm towards the center of his body and the firearm. At that moment, Simmerman fired at Holland. Holland retreated back into the corridor with the firearm. And Simmerman, trailed closely by other officers, followed Holland into the corridor. Simmerman then fired additional rounds into the corridor, and

Holland's gun slid onto the floor. In total, Simmerman fired 15 rounds at Holland and struck him at least six times. Officers rendered aid, but Holland died from his wounds.

The Holland family (the Hollands) sued the City of Sikeston and Simmerman. The Hollands allege six causes of action: (Count I) excessive force in violation of the Fourth and Fourteenth Amendment against Simmerman under § 1983; (Count II) wrongful death against Simmerman under Mo. Rev. Stat. § 537.080(1); (Count III) battery against Simmerman under § 537.080(1); (Count IV) a custom, policy, pattern or practice of using excessive force in violation of the Fourth and Fourteenth Amendment against the City under § 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); (Count V) deprivation of substantive due process in violation of the Fourteenth Amendment against Simmerman under § 1983; and (Count VI) a custom, policy, pattern, or practice of substantive due process violations in violation of the Fourteenth Amendment against the City under § 1983 and *Monell*.

The City and Simmerman moved to dismiss the complaint, arguing the Hollands failed to state any claim upon which relief could be granted and that Simmerman was entitled to qualified and official immunity. Along with their motion, the City and Simmerman submitted three videos from the body-worn cameras of officers on the scene. The district court granted the motion and dismissed the complaint with prejudice.[1] First, it granted Simmerman qualified immunity on Count I, the § 1983 excessive force claim, because the videos blatantly contradicted the allegations that his conduct was not objectively reasonable and, notwithstanding the videos, he did not violate a clearly established constitutional right. Second, it

---

[1]In their response to the City's and Simmerman's motion to dismiss, the Hollands requested the district court dismiss Counts V and VI without prejudice. The district court, however, determined Simmerman and the City "are entitled to qualified immunity on all of Decedent's § 1983 claims," so it dismissed Counts V and IV with prejudice. On appeal, the Hollands do not make any arguments related to Counts V and VI, so those issues are waived. *See Waters v. Madson*, 921 F.3d 725, 740–41 n.8 (8th Cir. 2019).

granted Simmerman official immunity on Counts II and III, the state-law claims, because, in light of the videos, it was not plausible that Simmerman acted with bad faith or malice. And, third, it dismissed Count IV, the *Monell* claim, against the City because there was no well-pled underlying constitutional violation. The Hollands appeal.

## II. Discussion

The Hollands argue the district court erred by dismissing Counts I, II, III, and IV with prejudice. Specifically, they claim the district court incorrectly determined Simmerman is entitled to qualified immunity and official immunity, and wrongly concluded that there was no underlying constitutional violation to support the *Monell* claim against the City. We agree that the district court erred by granting Simmerman qualified immunity on Count I. We, therefore, reverse the dismissal of Count I and remand for the district court to reconsider Counts II, III, and IV.

### A. Count I

We review motions to dismiss based on qualified immunity de novo. *Watkins v. City of St. Louis*, 102 F.4th 947, 951 (8th Cir. 2024). "To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Brown v. Linder*, 56 F.4th 1140, 1143 (8th Cir. 2023)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff "need not allege facts in painstaking detail," but he must allege facts that "raise a right to relief above the speculative level." *Watkins*, 102 F.4th at 951 (cleaned up). And, "[i]n reviewing a motion to dismiss, we may consider matters 'embraced by the complaint,' such as video evidence, where no party challenges the contents' authenticity." *Young v. Keyes*, 176 F.4th 573, 577 (8th Cir. 2026) (quoting *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017)). If a plaintiff's allegations are blatantly contradicted by video evidence, we are not required to accept them. *See Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019).

Video evidence blatantly contradicts alleged facts if it "conclusively disprove[s] plaintiff's account of the events." *Young*, 176 F.4th at 577.

A district court should dismiss a complaint when qualified immunity "is established on the face of the complaint." *Watkins*, 102 F.4th at 951 (quoting *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995)). "Qualified immunity shields public officials from liability for civil damages if their conduct did not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *LeMay v. Mays*, 18 F.4th 283, 286–87 (8th Cir. 2021) (quoting *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (en banc)). To overcome dismissal based on qualified immunity, "the plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* at 287 (cleaned up). "If either prong is not satisfied, the defendant is entitled to qualified immunity." *Id.*

Turning to Count I, excessive force in violation of the Fourth Amendment,[2] "we consider whether the amount of force used was objectively reasonable under the particular circumstances." *Young*, 176 F.4th at 578 (quoting *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020)). "'We evaluate the reasonableness of the force used from the perspective of a reasonable officer on the scene,' without the benefit of hindsight." *Id.* (quoting *Kohorst*, 968 F.3d at 876). In other words, "the question is whether the officers' actions are objectively reasonable in light of the facts and

[2]Count I alleges excessive force in violation of both the "Fourth and Fourteenth Amendments of the United States Constitution." Claims for excessive force under the Fourth and Fourteenth Amendments are analyzed differently. *See Wilansky v. Morton Cnty.*, 179 F.4th 633, 642 (8th Cir. 2026) (explaining that we apply "the shocks-the-conscience standard to Fourteenth Amendment [excessive force] claims"). The district court did not make this distinction, but, nonetheless, dismissed the complaint in its entirety. On appeal, the Hollands do not argue they plausibly alleged a claim for excessive force under the Fourteenth Amendment. Therefore, this claim was abandoned. *See Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 740 (8th Cir. 1985).

circumstances confronting them." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (cleaned up).

Here, the alleged use of excessive force — "fifteen (15) rounds" and "six" strikes — occurred seconds apart in three separate volleys. The first volley occurred when Simmerman fired the initial shots at Holland, who was standing in the corner, holding the firearm, and facing law enforcement, and it was captured on video. The second and third volleys occurred after Holland was initially shot and had moved behind a wall into the corridor, so they were not fully captured in the videos presented. Indeed, critically, while the videos show Simmerman firing these shots and Holland's firearm sliding across the floor, they do not show Holland's actions.

The district court found that the videos blatantly contradicted the Hollands' allegations because they show that Holland took a "menacing action" towards officers before Simmerman shot him. Specifically, it determined the videos showed that Holland, "in a split-second, . . . moved the gun from his right temple, lowered the gun in front of his body with the muzzle pointed away from him, extended his right arm, and moved his left hand up from his hip towards the gun." Therefore, it concluded Simmerman could have reasonably believed Holland was getting into a "shooting stance" and going to shoot the officers, so Simmerman's use of deadly force was objectively reasonable and qualified immunity was warranted. The Hollands, however, argued the excessive force claim should not be dismissed because the videos do not depict Holland during the second and third volleys and, thus, any related allegations could not be blatantly contradicted. But the district court rejected this argument, stating, "The Complaint does not parse Officer Simmerman's rapidly successive uses of deadly force and, under these circumstances, neither will this Court."

First, the Hollands argue the district court erred by granting Simmerman qualified immunity because the videos do not show Holland pointing the firearm towards officers, advancing towards the officers, or taking a menacing action towards the officers. Second, the Hollands argue that even if the first volley of shots was justified, "the video does not support that same alleged justification for

[Simmerman's] last two volley of rounds," so the grant of qualified immunity and dismissal were erroneous. We disagree with the Hollands' first argument but agree with their second.

The videos blatantly contradict the Hollands' allegation that "[Holland] never . . . took menacing actions towards . . . Defendant Simmerman . . . ." In particular, Sergeant Daniel Johnson's body camera footage shows that Holland was holding the firearm in his right hand and, in a split second, lowered the firearm away from his temple while simultaneously raising his left hand towards the center of his body. Before this, Holland refused repeated officer commands to drop the firearm and told the officers, "I kill myself or you kill me. There's your options. You got -- You got no more options." Under the totality of the circumstances and our precedent, Holland took a menacing action.

We have held the following to be objective threats or menacing actions: pointing a rifle outward and raising it while advancing towards officers, *Maser v. City of Coralville*, 139 F.4th 1004, 1009–10 (8th Cir. 2025); reaching for and raising a loaded gun, *Aden v. City of Bloomington*, 128 F.4th 952, 960 (8th Cir. 2025); fleeing but running in the general direction of officers while carrying a gun, *Liggins v. Cohen*, 971 F.3d 798, 801 (8th Cir. 2020); "fail[ing] to respond to commands to drop the weapon" and "rais[ing] the gun to [an officer's] shin level," *Rogers v. King*, 885 F.3d 1118, 1121–22 (8th Cir. 2018); and "turning to face the deputies and using his right hand to maneuver [what appeared to be a] rifle," but pointing the muzzle of the rifle "toward the sky." *Dooley v. Tharp*, 856 F.3d 1177, 1182 & n.2 (8th Cir. 2017). In summary, where a suspect disregards commands to drop a firearm, faces officers, and moves the firearm in their general direction — even if not squarely aimed at officers — we have found the suspect's actions are menacing as a matter of law. So, in total, Holland's repeated refusals to drop the firearm, his positioning towards officers, his quick lowering of the firearm, and his left hand moving towards the direction of the firearm, was a menacing action. *See Liggins*, 971 F.3d at 801 ("With only a second or two to react . . . , [the officer] had reasonable grounds to believe that the fleeing subject . . . could raise the gun and shoot. It would take only an instant to do so if the person were ready to fire."). As a result, Simmerman's first

volley was objectively reasonable, entitling him to qualified immunity to the extent the Hollands' claims relate to those shots.

But our inquiry does not end there. The Hollands also allege Simmerman's use of deadly force — "fir[ing] fifteen (15) rounds from his military-style automatic assault rifle at [Holland] within a mere few seconds, striking [him] at least six times and killing him" — "was excessive and not objectively reasonable." When read in its entirety, the complaint does not limit the use of excessive force to the first volley of shots. Instead, it alleges that the *fifteen* shots and *six* strikes, which occurred across all three volleys, amounted to excessive force. As a result, we agree with the Hollands that the district court erred by impermissibly narrowing the scope of the excessive force claim to only the first volley of shots.

Excessive force claims are not subject to heightened pleading requirements, like, for example, fraud claims. *See Harris v. St. Louis Police Dep't*, 164 F.3d 1085, 1086–87 (8th Cir. 1998). The Hollands were not required to plead fifteen separate instances of excessive force. Further, in excessive force cases, courts must evaluate the "'totality of the circumstances.'" *Barnes v. Felix*, 605 U.S. 73, 79 (2025). Courts cannot "put on chronological blinders" and selectively review portions of the alleged violation. *Id.* at 82. Thus, the district court's inquiry should not have ceased after the first volley of shots; particularly, whereas here, the complaint alleges that Simmerman used excessive force by firing *fifteen* rounds at Holland, striking him *six* times.[3]

[3]The district court emphasized that the complaint "focuses entirely on Officer Simmerman's *initial* use of deadly force," and, for support, it referenced an allegation that Holland was killed "14 minutes and 56 seconds after their first contact . . . ." This characterization is inconsistent with pleading standards. The complaint, when read as a whole, plausibly alleges a claim for excessive force based on all of Simmerman's shots. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007) ("The inquiry, as several Courts of Appeals have recognized, is whether *all* of the facts alleged, *taken collectively*, give rise to a strong inference of

Simmerman, nevertheless, argues he is also entitled to qualified immunity for the second and third volleys because Holland "remained in possession of the pistol after the initial volleys" and "did not relinquish control of the pistol until the last shot was fired . . . ." But the videos do not conclusively show that this is what happened. Rather, they merely show Simmerman firing the second and third volleys and Holland's pistol sliding across the floor. Holland's positioning, movements, and state while in the corridor and out of view are not depicted.[4] So, we must credit the Hollands' allegation that "[Holland] never threatened . . . any of these officers . . . at *any time* throughout the *entire* episode," at least as to the second and third volleys, because it is not blatantly contradicted by the videos. And when we do so, Simmerman is not entitled to qualified immunity for the second and third volleys. *See Brockington v. Boykins*, 637 F.3d 503, 507 (4th Cir. 2011) ("Rather than shoot [the suspect] as he lay helpless on the ground, a reasonable police officer would have asked him to surrender, called for backup or an ambulance, or retreated, *depending on the facts that emerge through discovery*." (emphasis added)); *see also Est. of Hernandez v. City of Los Angeles*, 139 F.4th 790, 800 (9th Cir. 2025) (en banc) ("[A] reasonable jury could find that after the second volley, the immediate threat posed by [the suspect] had ended."); *Church v. Anderson*, 898 F.3d 830, 834 (8th Cir. 2018).

**B. Counts II, III, and IV**

Following its dismissal of Count I, the district court dismissed Counts II and III, the state-law claims against Simmerman, and Count IV, the *Monell* claim against the City. As to Counts II and III, the district court determined that Simmerman was entitled to official immunity under Missouri law because he "could have reasonably believed that [Holland] was pointing or was about to point his pistol at the officers

---

[liability], not whether any individual allegation, scrutinized in isolation, meets that standard." (second emphasis added)).

[4]Though Holland can be heard on the videos after the first volley, we simply do not know his actions while in the corridor. Other evidence produced during discovery may bear on this.

and that he engaged in a menacing action."[5] As to Count IV, the district court determined that because the excessive force claim against Simmerman failed, the *Monell* claim against the City "likewise fail[s]." Therefore, the district court's analysis on the remaining claims — Counts II, II, and IV — was driven by and intertwined with its disposition of Count I. And, for the reasons explained above, the district court erred by reading the Hollands' excessive force claim too narrowly. So because our reversal on Count I affects the remaining issues, we remand for the district court to reconsider its dismissal of Counts II, III, and IV.

## III. Conclusion

For the reasons above, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I largely agree with the court's opinion, including its well-reasoned analysis of the second and third volley. My only disagreement is with respect to its analysis of the first volley. Given the quality of the video recordings, I cannot confidently make out the direction in which Holland is moving his pistol and am unable to rule out the possibility that the videos depict Holland in the process of pointing his pistol at the wall to his left, or even at himself, rather than at the officers in front of him and to his right. Accordingly, I would hold that the video evidence does not blatantly contradict the Hollands' allegations.

---

[5]While this appeal was pending, the Missouri Court of Appeals decided *McGaugh v. Naudet*, which discusses the availability of official immunity to well-pled intentional torts. 733 S.W.3d 441, 462–64 (Mo. Ct. App. 2026). On remand, the district court should consider what, if any, impact *McGaugh* has on this case, bearing in mind that "[d]ecisions by the Missouri Court of Appeals may be used as an indication of how the Missouri Supreme Court may rule . . . ." *Great Lakes Ins. SE v. Andrews*, 33 F.4th 1005, 1008 (8th Cir. 2022) (quoting *Burger v. Allied Prop. & Cas. Ins. Co.*, 822 F.3d 445, 447 (8th Cir. 2016)).

I also write separately to emphasize that the question of whether Simmerman had a sufficient basis to use deadly force turns on "the totality of the circumstances" and "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Thompson v. Dill, 930 F.3d 1008, 1013 (8th Cir. 2019); Graham v. Connor, 490 U.S. 386, 396 (1989). Regardless of how exactly one parses the video evidence, it is difficult to conclude that it blatantly contradicts the Hollands' allegations when so many of the relevant facts remain unknown. This case has not yet proceeded past the motion-to-dismiss stage, making prior cases decided on summary judgment less helpful to our analysis, particularly when they are distinguishable along numerous dimensions—involving briefer exchanges before a shooting, more threatening behavior, and a greater risk of danger to officers and third parties. See Maser v. City of Coralville, 139 F.4th 1004, 1006–10 (8th Cir. 2025); Aden as Tr. for Est. of Aden v. City of Bloomington, 128 F.4th 952, 955–57, 959–60 (8th Cir. 2025); Liggins v. Cohen, 971 F.3d 798, 799–801 (8th Cir. 2020); Rogers v. King, 885 F.3d 1118, 1119–22 (8th Cir. 2018); Dooley v. Tharp, 856 F.3d 1177, 1178–84 (8th Cir. 2017).

For these reasons, I respectfully dissent from the court's decision to affirm the grant of qualified immunity as to the first volley, but I otherwise join the opinion in full.

______________________________